Argued and submitted December 14, 1989, the decision of the Court of Appeals affirmed and order of the circuit court terminating mother's parental rights affirmed July 17, 1990

In the Matter of
Geist, Khristina; Geist, Charles,
and Geist, William, Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
Khristina Geist, Charles Geist and William Geist,
*Respondents on Review,*

*v.*

Debbie GEIST,
*Petitioner on Review.*

(TC 86-518, 86-518A, 86-518B;
CA A45355; SC S36325)

796 P2d 1193

Angela Sherbo, Portland, argued the cause for petitioner on review Debbie Geist. With her on the petition were Julie H. McFarlane and Juvenile Rights Project, Inc., Portland.

Robert M. Atkinson argued the cause for respondents on review.

Alice Bussiere and Teresa Demchak, National Center for Youth Law, San Francisco, Carole Shauffer, Youth Law Center, San Francisco and Michael H. Marcus, Legal Aid Service, Portland, file a brief on behalf of *amici curiae* National Legal Aid and Defender Association and Oregon Human Rights Coalition.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

VAN HOOMISSEN, J.

** Linde, J., retired January 30, 1990.

*** Jones, J., resigned April 30, 1990.

## VAN HOOMISSEN, J.

Mother appeals from a circuit court order terminating her parental rights. *Former* ORS 419.523.[1] We allowed review to consider her contention that the Court of Appeals erred in holding that it could not review her claim that her appointed trial counsel was inadequate.[2] We hold that such claims may be reviewed on direct appeal. On *de novo* review, we find that mother's counsel was adequate, and we affirm.

### FACTS

We take the following facts from the Court of Appeals' opinion:

"Mother has three children from her marriage to Bill Geist, who has had a severe drug and alcohol problem and has repeatedly abused mother and the children. When mother left the family home sometime during the week of May 20, 1985, police investigated reports that she no longer wanted the children and that they had not been to school for two weeks. Finding mother gone, the father disoriented and the house dirty and without a sufficient food supply, the police took the children away. The father was indicted on October 16, 1985, for sexual abuse in the first degree and sodomy, and he relinquished his parental rights on April 2, 1987. The father's conduct has left the children emotionally disturbed.

"On May 21, 1985, the court placed the children in the temporary custody of Children's Services Division after mother indicated that she needed to get a divorce, a steady job and a new home before resuming their care. On July 31, 1985, the court made the children wards of the court and continued temporary custody in CSD. Mother was ordered to participate in individual counseling, parenting classes and a battered

---

[1] *Former* ORS 419.523 provided in part:

"(1) The parental rights of the parents of a child within the jurisdiction of the juvenile court * * * may be terminated as provided in this section and ORS 419.525. * * *

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change."

*Former* ORS 419.523 was amended by Or Laws 1989, ch 907 § 2, in a manner not relevant to our decision in this case.

[2] Mother has different appointed counsel on appeal.

women's group, but she attended only some of the parenting classes. [In February, 1986, and again in October, 1986, the trial court continued CSD's temporary custody of the children.] On December 10, 1986, the court again ordered mother to complete CSD's plan and appointed counsel to represent her.[3] Mother again failed to comply with the plan. The state filed an amended petition to terminate her parental rights on May 20, 1987;[4] and on July 17, 1987, the court issued a termination judgment." *State ex rel Juv. Dept. v. Geist,* 97 Or App 10, 12-13, 775 P2d 843 (1989). (Footnote omitted.)

The children originally were made wards of the circuit court in 1985 based upon their dependency. When mother's trial counsel was first appointed in 1986, no termination petition had

---

[3] ORS 419.525(2) provides in part:

"If the parents are determined to be indigent by the court, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense."

[4] The amended petition alleged in part:

"A. Debbie Geist, mother of the above-named children, is not fit by reason of conduct and condition seriously detrimental to the children, and reintegration of the children into the home of the mother is improbable in the foreseeable future due to conduct and condition not likely to change, including but not limited to:

"1. The mother suffers from emotional illness of such intensity and duration as to render it impossible for her to care for the children for extended periods of time.

"2. The mother has a long history of employment and residential instability.

"3. During the time the mother has had physical custody of the children, they have been subject to sexual abuse, physical abuse, neglect, and medical neglect. The children are now emotionally and behaviorally disturbed children as the result of the abuse and instability they have experienced.

"4. There has been a lack of effort on the part of the mother to adjust her circumstances to make return of the children possible, and the mother has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that it appears reasonable no lasting adjustment can be effected, including, but not limited to:

"a. Since May, 1985, when the children were taken into custody, the mother has been provided with assistance with Children's Services Division, psychological evaluations and assessments, parenting classes, victim's counseling, housing authority, TPIC, individual counseling, AFS, drug and alcohol evaluation, and referrals for individual counseling and family counseling.

"b. The mother has failed to effectively follow through with the recommendations of the Court, Children's Services Divisions, and the psychologist in any program designed to lend [*sic*] to a return of the children to her custody. The mother has failed to comply with the Court's Orders of July 31, 1985, and December 10, 1986, which outlined actions needed to be taken toward achieving an ability to provide adequate care for the children. The mother has failed to comply, despite repeated warning that failure to progress could lead to loss of parental rights."

yet been filed. Counsel represented mother in the dependency proceedings and continued to represent her after the original and amended termination petitions were filed.

## THE TERMINATION HEARING

The termination hearing was set for June 23. In a letter dated June 18, 1987, mother's appointed trial counsel advised the circuit court that:

"I was informed last Friday, June 12, 1987, that I was removed from the court appointment list for dependency cases. I have asked Judge Herrell for clarification. However, since it is my understanding that the removal of an attorney who has already been qualified for a list usually means that the attorney has been found to be incompetent, or has engaged in misconduct, I cannot proceed on the Geist case until I do receive clarification. If I was removed from the list for the above reasons, then I will naturally have to resign from this termination case."[5]

On June 23, 1987, mother's trial counsel made an oral motion to withdraw. The following colloquy occurred:

"[COUNSEL]: Your Honor, I was going to bring to the Court's attention the fact that I have been removed from the Juvenile Court list. I am not clear why that happened.

"My continuation of this case might be a violation of a

_____

[5] ORS 151.480(1) provides in part:

"When a court * * * has the power to appoint counsel to represent an indigent in a proceeding in a circuit * * * court * * * and the state * * * is required to pay compensation for that representation, * * * the court * * * shall appoint as counsel:

"An attorney who, in the opinion of the court * * * satisfies the standards of eligibility established under ORS 151.430(3)(a)."

ORS 151.430(3)(a) provides in part:

"The State Court Administrator shall establish standards of eligibility for:

"Appointed counsel compensated at public expense to represent indigents in the state courts * * *."

Mother's trial counsel was on the circuit court's list of attorneys approved for appointment in dependency cases, but she was not on the court's list of attorneys approved for appointment in termination cases. The attorney eligibility standard for dependency cases requires less experience than the standard for termination cases. The record does not show whether counsel, in fact, was removed from the dependency appointment list or, if so, the reason for such removal. However, whether counsel provided adequate representation in *this* proceeding is not controlled by her presence or absence from those lists.

disciplinary rule and, therefore, under Rule 210(b)(2) [*sic*], I request the court's permission to withdraw from this case.[6]

"[Judge LaMar]: I previously indicated to you that you received an order of appointment from some Judge or Referee and I have been leafing through the file to try to find out who signed that order but I indicated on Friday that, as far as I was concerned, you were appointed to represent your client and you had the ethical duty to do so.

"[COUNSEL]: Yes, I was appointed to this case. However, it was an inadvertent appointment because I was not on the list to do the terminations.

"I should not be doing this case. *I did receive verbal permission from Judge Herrell to continue with this case.* That verbal permission was received prior to my removal from other Juvenile Court matters.

"If Your Honor feels that that is adequate for me to proceed, I am simply making my mandatory request to withdraw and that's been denied. Apparently, that takes care of it.

"[Judge LaMar]: *I don't have any reasons to believe that you are not competent to represent your client.* I have not observed you personally in a termination proceeding. Check with me again in three days.

"But my information from Judge Herrell is that he did, in fact, advise you to continue to represent your client and, as far as I can tell, there is nothing in the file or any communications between or among you or the Judges that would indicate to the contrary.

"So let me ask you, Ms. Geist, have you been satisfied?

"* * * * *

---

[6] We understand counsel's motion to be based solely on her interpretation of the Code of Professional Responsibility, specifically DR 2-110(B)(2), which provides:

"A lawyer representing a client before a tribunal * * * shall withdraw from employment * * * if:

"The lawyer knows or it is obvious that the lawyer's continued employment will result in violation of a Disciplinary Rule."

We do not interpret (and mother does not argue) trial counsel's motion to be any representation or admission on her part that she considered her professional skills inadequate to represent mother in this termination case. There being no evidence to the contrary, we presume that when Judge Herrell authorized counsel to *continue* representing mother during the termination proceeding, and when Judge LaMar denied counsel's motion to withdraw, *see infra,* both believed that counsel satisfied the eligibility standards established under ORS 151.430(3)(a). OEC 311(1)(j) (official duty has been regularly performed) and (x) (the law has been obeyed).

"[COUNSEL]: She has never been represented by counsel before.

"[Judge LaMar]: Well, she has been represented by you for over six months.

"Ms. Geist, have you been satisfied with the representation that [counsel] has provided to you during the course of the last six months or so?

"MS. GEIST: Yes.

"[Judge LaMar]: And do you have any reason to believe that her continuing to represent you would be inappropriate for any reasons?

"MS. GEIST: No, I wouldn't want to go through it again and have to start all over with another lawyer.

"[Judge LaMar]: Aside from that issue, have you been satisfied with her representation?

"MS. GEIST: Yes." (Emphasis added.)

The court denied counsel's motion to withdraw, stating:

"[Judge LaMar]: The appointment will continue and I believe that goes back to December of 1986 and it was continued by Judge Nachtigal in the hearing in front of her, not on a termination petition but on the review that was held."

After hearing the evidence and arguments of counsel, including the childrens' appointed counsel who agreed with the state that mother's parental rights should be terminated, the circuit court made extensive oral findings.[7] The circuit court concluded:

"I find it overwhelmingly conclusive that the best interests of these children, as well as the conditions and circumstances of the mother and the lack of effort to adjust her circumstances to meet her children's needs, requires that the children continue as wards of the Court, that the parental rights of the mother be terminated, and that the children be permanently committed to the care of Children's Services Division for adoptive placement."

The court thereafter ordered that mother's parental rights be terminated. The court's termination order reads in part:

"[T]he allegations of the petition for termination of the

---

[7] The court's findings are correctly summarized in the Court of Appeals' opinion. *State ex rel Juv. Dept. v. Geist,* 97 Or App 10, 14-15, 775 P2d 843 (1989).

parental rights of the mother have been proven by clear and convincing evidence. The mother has shown that she is unable to overcome the emotional issues which have occurred over the past few years and impeded her care of the children on her own. It also appears that the mother has refused to acknowledge these issues and that further attempts at counseling in light of that resistance are fruitless. It also appears that the children have significant needs which the mother is unable to address, and it is in the best interest of the children that the parental rights of the mother be terminated."

At no time did the trial judge[8] or the children's trial counsel express any reservation about the adequacy of mother's trial counsel.

 Mother appealed the termination order, contending, in part, that her trial counsel had been inadequate.[9] The Court of Appeals refused to consider that claim, explaining:

"Presently, ORS 419.525(2) requires the appointment of counsel for indigent parents in termination cases, and we may assume that the legislature intended that competent and effective counsel be appointed. However, it has not provided a specific procedure or forum for determining whether a parent has been afforded effective assistance of counsel.

"* * * * *

"[E]ven though we can accept mother's assertion of a right to competent and effective counsel under the statute, direct appeal on the trial court record is not the appropriate forum. The legislature has not created a special forum, as it has in criminal matters (ORS 138.510 - ORS 138.680), and there is no source from which we may derive the authority to create

---

[8] We assume the circuit court has inherent authority to remove appointed counsel if found to be inadequate. *See* n 12, *infra.* We also assume a child's counsel has an interest in the adequacy of a parent's counsel. The child's interest would be adversely affected if a termination order is subsequently reversed because a parent's counsel's was inadequate.

[9] Notwithstanding mother's failure to preserve this claim of error in the circuit court, we may address it because it was addressed by the Court of Appeals. ORAP 9.20(2); *see State v. Lutz,* 306 Or 499, 502, 760 P2d 249 (1988).

We recognize the reality that it is unlikely that any challenge to the adequacy of appointed trial counsel will have been preserved in the circuit court. It is neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate. Because of the important timeliness considerations discussed below, we conclude that the general rule that appellate courts will only consider error that has been preserved at trial need not be strictly applied to the issue of appointed trial counsel's adequacy in a parental rights termination proceeding.

one. We hold that the question of the effectiveness of counsel may not be reviewed on direct appeal." (Footnote omitted.) *State ex rel Juv. Dept. v. Geist, supra,* 97 Or App at 17-18.

On *de novo* review, the Court of Appeals concluded that the evidence, taken as a whole, justified terminating mother's parental rights, 97 Or App 15, and affirmed the circuit court's termination order. We affirm the Court of Appeals' decision, but on different grounds. ·

## REVIEW OF COUNSEL'S ADEQUACY

■ Mother first argues that trial counsel appointed under ORS 419.525(2) must be adequate. The Court of Appeals assumed that the legislature intended a statutory right to counsel to include a right to adequate counsel. 97 Or App at 17. We agree.

■ Mother next argues that the state must give her a procedure whereby she may challenge her appointed trial counsel's adequacy. Again, we agree. The statutory right to adequate trial counsel may prove illusory if there is no procedure for review of claims of inadequate counsel.[10] We reject the notion that, although mandating the appointment of trial counsel for indigent parents, the legislature intended that no procedure be available to vindicate that statutory right. Absent an express prohibition against challenges of adequacy of appointed counsel, we do not interpret the legislature's omission of an express procedure as evidencing any legislative intent to preclude such challenges. Absent an express legislative procedure for vindicating the statutory right to adequate counsel, this court may fashion an appropriate procedure.[11]

---

[10] The parties' implicit recognition that the circuit court had inherent authority to remove appointed counsel if found to be inadequate is supported by the decisions of this court and the United States Supreme Court. *See Krummacher v. Gierloff,* 290 Or 867, 875-76, 627 P2d 458 (1981) (court will not ignore counsel's decisions which reflect an absence or suspension of professional skill and judgment); *Strickland v. Washington,* 466 US 668, 689, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance); *McMann v. Richardson,* 397 US 759, 771, 90 S Ct 1441, 25 L Ed 2d 763 (1970) (for the most part, the matter of trial counsel's adequacy should be left to the good sense and discretion of the trial court).

[11] *See* ORS 419.561(4); *see also Day v. Griffith,* 283 Or 393, 403, 584 P2d 261 (1978); *Stan Wiley v. Berg,* 282 Or 9, 21-23, 578 P2d 384 (1978).

We proceed to determine what is an appropriate procedure in this context.

## PROCEDURE

■ The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants. *State v. Jamison,* 251 Or 114, 117, 444 P2d 15, 444 P2d 1005 (1968). Finality in the resolution of parental rights termination cases should be achieved as expeditiously as possible, consistent with due process. *See Lehman v. Lycoming County Children's Services,* 458 US 502, 513-14, 102 S Ct 3231, 73 L Ed 2d 928 (1982) (the state's interest in finality is unusually strong in a child custody dispute; few things are as detrimental to children as uncertainty about their living situation); *Lassiter v. Department of Social Services,* 452 US 18, 32, 101 S Ct 2153, 68 L Ed 2d 640 (1981) (child custody litigation must be concluded as rapidly as is consistent with fairness); *In re Interest of C.D.C.,* 235 Neb 496, 455 NW2d 801 (1990) (children should not be suspended in foster care, or made to await uncertain parental maturity). The United States Supreme Court has stated that federalism concerns *and the exceptional need for finality in child-custody disputes* argue strongly against the grant of federal habeas corpus to review a state court decision involuntarily terminating the rights of a parent. *Lehman v. Lycoming County Children's Services, supra,* 458 US at 515-16.

Experience teaches us that by the time a petition to terminate parental rights has been filed, the child(ren) involved probably will have been known to the juvenile authorities for a long period of time, often several years. In this case, for example, more than two years passed between the filing of the original dependency petition and the entry of the termination order. Generally, termination case records will show that services have been provided (or at least have been offered) to the parent(s) by several social service agencies, as was the case herein. Ultimately, and often as a last resort, the state will petition for termination of parental rights in order to free the child for adoption, so that the child will have an opportunity to be permanently integrated into a new family.

Any delay in achieving finality in a termination case adversely affects the rights of all the parties. Delay certainly

will weaken the bonds between parents and children by lengthening their separation. Whether or not the eventual result is termination, protracted litigation extends uncertainty in the child(ren)'s life. Where a termination has been affirmed on direct appeal, procedures allowing further litigation or collateral attacks would delay the finality of the termination order and, thus, also delay the possibility of permanent adoption with the probable effect of reducing the chances for successful integration into an adoptive family. Thus, a procedure that allows a terminated parent to make a claim of inadequate counsel only after all direct statutory appeals have been exhausted would only further delay the finality of the termination decisions.

■■ We conclude that after an adjudication terminating parental rights, appellate courts must not permit children to remain in the limbo of impermanent foster care (which we believe often will be detrimental to their best interests) any longer than is absolutely necessary. Because of the importance of expeditious resolution of termination proceedings, and absent statutes providing otherwise, we hold that any challenges to the adequacy of appointed trial counsel in such proceedings must be reviewed on direct appeal.[12]

## STANDARD OF ADEQUACY

■ Having determined that a claim of appointed trial counsel's inadequacy may be reviewed on direct appeal, we next consider what standard of adequacy should be applied in this context, an issue of first impression for this court. Mother argues that we should adopt the constitutional criminal law standard. *See Krummacher v. Gierloff,* 290 Or 867, 872, 627 P2d 458 (1981) (state and federal constitutions call for an adequate performance by counsel of those functions of professional assistance which an accused person relies upon counsel to perform). For the reasons which follow, we reject that standard and instead, adopt a standard which seeks to determine whether a termination proceeding was "fundamentally fair."

---

[12] Because we hold that state law provides a statutory right to adequate counsel and a procedure by which to vindicate that right, we need not address mother's Fourteenth Amendment due process claim that the state must provide a remedy to vindicate her right to adequate counsel. *See Oregon State Police Assn. v. State of Oregon,* 308 Or 531, 537, 783 P2d 7 (1989); *State v. Campbell,* 306 Or 157, 162, 759 P2d 1040 (1988).

*See McKeiver v. Pennsylvania,* 403 US 528, 543, 91 S Ct 1976, 29 L Ed 2d 647 (1971) (the applicable due process standard in juvenile proceedings is fundamental fairness); *see also* IJA/ABA, Juvenile Justice Standards Relating to Counsel for Private Parties (1977).

 A proceeding to terminate parental rights is not a criminal prosecution.[13] There are substantial differences between adult criminal cases and juvenile court proceedings involving children and their parents. Courts have long recognized that the substantive standards and procedural rules governing criminal cases are not necessarily applicable or even desirable in juvenile court proceedings. *See State v. McMaster,* 259 Or 291, 296-98, 486 P2d 567 (1971) (juvenile courts require greater flexibility than adult criminal courts); *Lassiter v. Department of Social Services, supra,* 452 US at 32-33, (due process does not require the appointment of counsel in every termination of parental rights case) (overruling our holding to the contrary in *State v. Jamison, supra,* 251 Or at 117); *Santosky v. Kramer,* 455 US 745, 768-69, 102 S Ct 1388, 71 L Ed 2d 599 (1982) (standard of proof in termination case is clear and convincing evidence, not proof beyond a reasonable doubt); *McKeiver v. Pennsylvania,* 403 US 528, 545, 91 S Ct 1976, 29 L Ed 2d 647 (1971) (Fourteenth Amendment does not require jury trial in juvenile delinquency proceeding); *In re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967) (Fourteenth Amendment does not require that a juvenile delinquency hearing conform with all of the requirements of adult criminal trials). Thus, different standards may properly govern adult criminal cases and juvenile cases. Likewise, standards that will apply in juvenile delinquency cases may not be required or even desirable in juvenile dependency cases. There simply is no compelling reason that the same standards applied in adult criminal cases also should be applied in juvenile cases.

 Circuit courts administering the Juvenile Code, ORS

---

[13] Any federal constitutional right mother might have to appointed counsel in a termination case would be derived from the Due Process Clause of the Fourteenth Amendment, not from the Sixth Amendment. The Oregon Constitution contains no due process clause. *State v. Wagner,* 305 Or 115, 145-46, 752 P2d 1136 (1988), *judgment vacated and remanded* 492 US ____, 109 S Ct 3235, 106 L Ed 2d 583 (1989). The right to counsel under Article I, section 11, of the Oregon Constitution, is available only in criminal prosecutions.

ch 419, act in *parens patriae*,[14] focusing on family unity and the best interests of the child. ORS 419.474(2) provides:

> "The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

In a termination case, for example, the issue is not whether a parent should be "punished" by a termination of his or her parental rights; rather, the issue is whether the statutory grounds for termination have been established by clear and convincing evidence, ORS 419.525(3), and, if so, whether the child's best interest will be served by termination of the parent-child relationship. ORS 419.523(1).[15] Children have a right to grow up in a wholesome and healthful environment, free from fear of abuse, injury or neglect. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time so as to provide such an environment, the best interests of the child(ren) generally will require termination of that parent's parental rights. *See In re Interest of C.D.C., supra*, 455 NW2d at 806.

To secure a parent's rights in the context of those underlying determinations, courts seek to determine whether the proceedings were "fundamentally fair." *See generally Santosky v. Kramer, supra*, 455 US at 753-54 (when the state moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures); *Lassiter v. Dept. of Social Services, supra*, 452 US at 33 (Fourteenth Amendment imposes on the states the standards necessary to insure that judicial proceedings are fundamentally fair). The essence

---

[14] The phrase "parens patriae" was taken from chancery practice where it was used to describe the power of the state to act *in loco parentis* for the purpose of protecting the property interests and person of the child. The history and theory underlying the development of the juvenile court system are discussed in *In re Gault*, 387 US 1, 14-17, 87 S Ct 1428, 18 L Ed 2d 527 (1967). *See* Juvenile Law (Oregon CLE 1984), Ch 1.

[15] *Even if* a court determines that a child's best interest will be served by a termination of parental rights, it may not be ordered unless the statutory grounds for termination have been established by clear and convincing evidence.

of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner. *See generally Mathews v. Eldridge,* 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976). Fundamental fairness emphasizes factfinding procedures. The requirements of notice, adequate counsel, confrontation, cross-examination, and standards of proof flow from this emphasis. *McKeiver v. Pennsylvania, supra,* 403 US at 543. Fundamental fairness is flexible and calls for such procedural protections as the particular situation demands.

■ Although no client has a constitutional or statutory right to a "perfect" defense, *see Krummacher v. Gierloff, supra,* 290 Or at 875, fundamental fairness requires that appointed counsel exercise professional skill and judgment. However, as we explained in *Krummacher v. Gierloff, supra,* 290 Or at 873-76, any formulation of a standard of performance required of counsel must take into account the remarkable variety of effective advocacy displayed daily in our trial courts by competent lawyers of differing approach, style, personality, temperament, and strategic inclinations. Because lawyers, judges, juries, clients, cases and communities vary, the application of any standard of performance, however stated, to an individual case necessarily involves a degree of subjectivity and *ad hoc* judgment. For that reason, the search for a single, succinctly-stated standard of performance, objectively applicable to every case, is "a fool's errand," *Id.,* 290 Or at 874, upon which we decline to embark.

■ ■ There may be many ways to properly represent a client in any given case. Generally, an attorney's choice of a particular theory of the case, the choice to call or not to call a particular witness, the choice to ask or not to ask certain questions, or the choice of a particular line of argument, will be tactical decisions. The mere fact that a tactical decision may backfire on counsel does not necessarily demonstrate that counsel was professionally inadequate. A particular tactical decision will constitute inadequate assistance of counsel only if a court affirmatively finds that *no* adequate counsel would have followed that tactic under the circumstances and, therefore, that following that tactic reflected an absence or suspension of professional skill and judgment. The fact that a different counsel, or most counsel, or even a reviewing court, might have pursued a different course, standing alone, does

not demonstrate that a trial counsel's tactic constituted inadequate assistance of counsel. *Krummacher v. Gierloff, supra,* 290 Or at 875, 881.

 In reviewing a claim that trial counsel was inadequate, we look to the totality of the circumstances. Absent a finding that a person was denied a fair trial because of the inadequacies of that person's trial counsel, citation of other tactical decisions counsel could have made, or should have made better, is not particularly instructive.

## BURDEN OF PROOF

 Here, the burden of proof to establish trial counsel's inadequacy is upon mother. She must produce some credible evidence which demonstrates that her termination proceeding was not fundamentally fair. That would be true even if the more stringent criminal law standard of adequacy applied. *See Guinn v. Cupp,* 304 Or 488, 496, 747 P2d 984 (1987); *Krummacher v. Gierloff, supra; Yeager v. Maass,* 93 Or App 561, 564, 763 P2d 184 (1988), *rev den* 307 Or 340 (1989); *Strickland v. Washington,* 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Mother must show, not only that her trial counsel was inadequate, but also that any inadequacy prejudiced her cause to the extent that she was denied a fair trial and, therefore, that the justice of the circuit court's decision is called into serious question. The bare assertion of trial counsel's inadequacy does not warrant a remand or reversal; nor does a finding of inadequacy, standing alone, require a remand or reversal if, on *de novo* review of the record, the reviewing court is satisfied that the proceeding was fundamentally fair and that even with adequate counsel, the result inevitably, would have been the same.

Here, mother argues that her claim that her trial counsel was inadequate can be decided on the circuit court record which, she asserts, demonstrates as a matter of law that her trial counsel was inadequate. She argues, however, that the record could not support a finding that her trial counsel was adequate, because it does not reveal her trial counsel's "errors of omission." In the event we find that the record does not affirmatively establish that her trial counsel was inadequate, mother asks that her case be remanded to the circuit court for factual findings on trial counsel's adequacy. Mother does not explain precisely how the hearing on remand would

proceed or what witnesses she would call or what other evidence she would offer relevant to the matters in issue. Apparently, however, mother would call other juvenile court practitioners who, she asserts, would testify that mother's trial counsel was inadequate.

 The state responds that mother's claim of inadequate counsel can be decided on the circuit court record without the need for a remand for additional factual findings, and that mother has failed to sustain her burden to show that her trial counsel was inadequate. We agree with the state that the record on appeal in this case is sufficient to decide the issue without remand to the circuit court for additional findings of fact.[16]

---

[16] The parties note a potential problem in direct review of a claim of appointed trial counsel's inadequacy. They suggest that such claims may involve evidence which trial counsel may have failed to present or arguments which counsel may have failed to make. They argue that it may be impossible to determine from the record on appeal whether the omitted evidence or argument would have made any difference in the outcome of the proceeding.

Without necessarily agreeing that a hearing would be constitutionally required, we note that any determination that relevant evidence or argument was omitted or whether such omission would have made any difference in the outcome is best made by the trial court. A hearing is appropriate, if ever, only when a parent raises a *substantial* question concerning issues other than those adjudicated at the termination proceeding.

Before authorizing an evidentiary hearing, a court doubtless would require a threshold showing of specific allegations, including the names of witnesses to be called, the expected substance of their testimony, and an explanation of how that testimony would show that trial counsel was inadequate. A parent's vague, unspecific, generalized argument that trial counsel's alleged inadequacies need to be "explored" at a hearing would never suffice. If authorized, any hearing should be strictly limited to the development of an evidentiary record and trial court findings of fact based on the evidence relating to the inadequate counsel claim.

The state has proposed a procedure to deal with situations in which the Court of Appeals finds further evidence is necessary to review of a claim of inadequate appointed trial counsel. Under the state's procedure, after the transcript in a termination proceeding has been settled, appellate counsel would have 30 days to move the appellate court for a remand to the juvenile court to take further evidence relevant to the adequacy of trial counsel. The party seeking the remand then would be required to convince the Court of Appeals that further evidence is necessary to resolve the issue of trial counsel's adequacy. If the Court of Appeals was satisfied with the merit of the remand motion, it could, in its discretion, remand the case to the trial court with appropriate instructions. If neither party so moved, or if the Court of Appeals denied a remand, the parties would proceed to argue the issue of counsel's adequacy in the Court of Appeals on the record.

We express no view on the merit of the state's proposed procedure, or, indeed, as to the necessity of any procedure at all. Fashioning such a procedure is the prerogative of the Court of Appeals or of the legislature in the first instance.

Mother contends that her trial counsel was neither qualified nor competent to render her adequate assistance in the context of a termination of parental rights trial. She asserts that her trial counsel's pre-trial factual and legal preparation was inadequate, that her counsel's trial skills were deficient, and that her counsel's "most damaging failure" was her "unrealistic and untenable" theory of the case, including her reliance on the battered woman's and post-traumatic stress syndromes as a defense. As noted in the hearing transcript quoted, *supra,* at the commencement of the termination hearing, mother expressed her satisfaction with her trial counsel's representation up to that time and she stated that she had no objection to counsel continuing to represent her during the termination proceeding. She does not contend here that her trial counsel did not keep her informed or refused or neglected to raise any issue or make any argument that she wanted counsel to raise or make.

We have painstakingly reviewed the record on appeal in an earnest effort to determine for ourselves whether mother's trial counsel exercised professional skill and judgment on her behalf and whether this termination was fundamentally fair. In short, did mother get a fair trial? Mother's brief and her appellate counsel's argument focuses on what her trial counsel "failed to do." Mother ignores, however, what her counsel did do on her behalf, including focusing on mother's "accomplishments" to the extent possible. The record shows that mother's counsel advocated vigorously for her, sought and obtained discovery, used an investigator, interviewed witnesses, briefed the pertinent legal issues, spent appropriate time and energy preparing for trial, effectively cross-examined the state's witnesses, and called witnesses in support of her theory of the case, which, we find, was tenable.

We conclude that mother's trial counsel represented her with professional skill and judgment and that mother's pejorative description of her counsel's performance amounts to little more than a generalized, after-the-fact critique of her counsel's tactical decisions, an exercise we have rejected. *See Krummacher v. Gierloff, supra,* 290 Or at 875-84. The fact that mother's appellate counsel may be able to criticize trial counsel's performance with the aid of a complete transcript of the proceedings below, the opportunity to do further research and consult with colleagues, and several weeks within which to

discover a "better" way to try the case does not persuade us to the contrary. Nor has mother persuaded us that there is any reasonable likelihood that a remand to the circuit court would produce evidence establishing trial counsel's inadequacy, or that any deficiency of counsel affected the outcome of the termination proceedings.

Looking to the totality of the circumstances and after reviewing the entire record, we conclude that the circuit court proceeding was "fundamentally fair" and that mother received a fair trial. Mother has not sustained her burden of proving that her trial counsel was inadequate.

## THE TERMINATION DECISION

■ We turn to the merits of the state's petition seeking termination of mother's parental rights. Upon *de novo* review of the entire record, giving considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony, ORS 19.125; *see State ex rel Juv. Dept. v. Habas,* 299 Or 177, 183, 700 P2d 225 (1982); *State ex rel Juv. Dept. v. Jones,* 290 Or 799, 810, 626 P2d 882 (1981), we agree with the Court of Appeals, 97 Or App at 14-15, that the state's evidence supporting the circuit court's termination order is clear and convincing. We also agree that the children's best interest will be served by terminating mother's parental rights. We therefore, affirm.

The decision of the Court of Appeals is affirmed, but on different grounds. The order of the circuit court terminating mother's parental rights is affirmed.