Argued and submitted December 6, 2001, reversed in part; vacated in part and remanded for further proceedings April 10, 2002

In the Matter of
Sierra Elizabeth Hayner Hinkle,
a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Sherry Patricia KOPP,
*Appellant.*

1999-819461; A113523

43 P3d 1197

Caryanne Conner argued the cause and filed the brief for appellant.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Brewer, Judge.

BREWER, J.

* Deits, C. J., *vice* Schuman, J.

**BREWER, J.**

Mother moved to set aside a default judgment terminating her parental rights. The juvenile court denied the motion, and mother appeals. We reverse the order denying mother's motion, vacate the termination judgment, and remand the case for further proceedings.

On *de novo* review of the record, ORS 419A.200(5); ORS 19.415(3), we find the following relevant facts. On June 5, 2000, mother was served with a summons to appear at a show cause hearing in connection with a petition to terminate her parental rights to her daughter. The summons directed her to appear on June 22 in the Juvenile Department of Multnomah County Circuit Court and provided the court's street address. In addition to stating the time and place of the hearing, the summons contained the following instructions and information:

"**NOTICE: READ THIS CAREFULLY!**

"THE PETITION SEEKS TERMINATION OF YOUR PARENTAL RIGHTS. IF YOU DO NOT APPEAR AS DIRECTED ABOVE, THE COURT WILL IMMEDIATELY TERMINATE YOUR PARENTAL RIGHTS TO THE ABOVE NAMED CHILDREN AT THE TIME OF THE ABOVE HEARING.

"At the above hearing, if you appear and contest the petition, a further hearing known as a pre-trial conference will be scheduled. A trial date will also be set. You must appear at both the pre-trial conference and the trial. Failure to appear at either hearing will result in the termination of your parental rights."

When the June 22 hearing first convened, mother was not present. Among other topics discussed in her absence, the court informed mother's counsel that a "best interest" hearing had been set for September 6.[1] Later that

---

[1] In the context of proceedings to terminate a parent's parental rights, Multnomah County Supplementary Local Rules (SLR) provides for "best interest" hearings for the purpose of affording parties an opportunity "to seek any possible means for resolution of the case without trial." SLR 11.045(6)(B). *See also* ORS 419B.500 (providing for termination of a parent's parental rights "if the court finds it is in the best interest of the child").

same day, mother was transported to the court, at which time the court orally informed her that a hearing had been set for September 6, briefly informed her of the purpose of the hearing, informed her that her appearance at the hearing was "mandatory," and informed her that, if she did not appear at the hearing, her rights could be terminated. The court also informed mother of two later proceedings, including a pretrial hearing set for October 2 and, "if the case goes to trial," a trial set for October 16 and 17. The court again informed mother that, "if you don't come, your rights could be terminated on the spot" and "you lose automatically." The court's order following the hearing noted the dates of the "best interest" hearing, pretrial hearing, and trial. In addition, the judge initialed a printed paragraph on the order, stating in part that mother was "given verbal and written notice of" and was "directed to appear at" the hearings, and that she was "advised of the consequences of [her] failure to appear" at any of those court appearances.[2]

Mother did not appear at the September 6 "best interest" hearing. In addition, although her counsel had indicated that counsel would appear by telephone, she could not be reached. After apparently brief testimony from a caseworker, mother's parental rights were terminated.[3] Judgment to that effect was entered on September 13, 2000.

On September 18, 2000, mother filed a request for rehearing. *See* ORS 419A.150 (providing that the judge of the juvenile court may direct that a case be heard by a referee and that, when the referee conducts a hearing, all orders of the referee shall become immediately effective, subject to a right of review by a judge; the party affected by the referee's order must request rehearing by a judge within 10 days after entry of the order into the court register; "rehearings of matters heard before a referee shall be heard * * * by a judge of the juvenile court within 30 days after the filing of the

---

[2] The transcript of the June 22 show cause hearing reflects that the court told mother that it would give her "a piece of paper * * * that has the dates * * * so don't worry about memorizing anything." As discussed below, mother did not recall receiving that writing.

[3] The tape recording of the September 6 hearing was blank and therefore was not transcribed.

request"). The rehearing was set for October 4. After rehearing, and apparently on the ground that a judge of the juvenile court had entered the September 13 termination order and that rehearing therefore was not available under ORS 419A.150, the court found that the "[p]roper procedure for this matter would be to ask * * * for reconsideration" and ordered that the termination remain in effect.

On October 16, mother moved to set aside the September 13 default judgment. On October 24, the court dismissed mother's motion on the ground that mother's counsel had failed to appear at the hearing on the motion.[4]

On October 17, mother filed a notice of appeal from the September 13 default judgment. On October 26, we dismissed the appeal as untimely. ORS 419A.200(3)(c).

On November 2, mother again moved to set aside the default judgment. On December 7, a referee held a hearing on the motion. The referee found that mother admitted being advised at the June 22 hearing of the September 6 "best interest" hearing but that mother did not "recollect actually receiving written notice" of the hearing. The referee denied the motion to set aside.

On December 14, mother requested rehearing before a judge. Rehearing was held on February 16, 2001. The state offered in evidence the transcript of the June 22 show cause hearing, indicating that mother was, at a minimum, orally informed of the September 6 best interest hearing. In addition, both parties offered evidence relating to the merits of the termination. Mother's caseworker testified regarding mother's compliance with scheduled parenting time with the child between April and August 2000. Mother testified about her living arrangements after June 22, including the fact that she was in police custody as of September 15, and about her parenting time with the child. She also testified that she recalled being "verbally told" about the September 6 best interest hearing, that she did not recall being informed in writing or receiving a copy of "an order," and that she herself had written down her court dates but had lost all of her

_____

[4] Mother's counsel later informed the court that she had not received the notice of the hearing, set for 11:00 a.m. on October 24, until the afternoon of that day.

"paperwork" when she was evicted from her residence. Mother testified that she was not aware that, if she did not appear at the best interest hearing, her parental rights could be terminated. Mother's counsel argued that mother's failure to appear at the hearing was excusable neglect based on her age,[5] her lack of family support and a place to live, and the fact that she herself was formerly the subject of a dependency petition. Counsel also argued that mother had been deprived of her right under the Fifth and Fourteenth Amendments to the United States Constitution to "due process notice," because the initial summons in the case made no mention of the best interest hearing.

Based on the transcript of the June 22 show cause hearing and the court's order following that hearing, the court determined that mother had had adequate notice of the September 6 best interest hearing and that, even assuming that she subsequently had lost her "paperwork" setting out the date of the hearing, she could have contacted the court and obtained that information. The court also noted that there was evidence that mother was abusing drugs and failing to visit the child consistently during the relevant time period. The court concluded that mother therefore had failed to demonstrate a lack of notice of the hearing amounting to a deprivation of her due process rights and that she had failed to demonstrate excusable neglect. The court denied the motion to set aside the default termination judgment.

On March 2, 2001, mother filed a notice of appeal both from the judgment terminating her parental rights and from the denial of her motion to set the judgment aside. This court again dismissed mother's appeal from the termination judgment as untimely, but ordered that "the appeal will proceed as to the [February 16, 2001,] order denying [mother's] motion to set aside the judgment." This is that appeal.

■ At the threshold, the state contends that, after this court dismissed mother's first notice of appeal as untimely, there was no longer an appeal from the termination judgment. The state argues that, under those circumstances,

---

[5] At the time of the June 22 hearing and succeeding events, mother was 17 years old.

mother lacked "standing" under ORS 419B.524 to contest the termination judgment by way of a motion to set it aside.[6] Because it affects the juvenile court's and this court's jurisdiction, we begin with that legal issue.

ORS 419B.524 provides:

> "Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the child."

We have not identified any previous decisions of this court or the Supreme Court construing ORS 419B.524 for the purposes of the circumstances at issue here. We therefore determine its meaning and effect according to the familiar methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). We begin with the text and context of the statute.

As initial matters, we agree with the state that, at the time mother filed her November 6 motion to set aside the termination judgment, this court had dismissed her appeal of that judgment. Accordingly, at that time there was no appeal of the judgment, and the exception clause of ORS 419B.524 therefore does not apply. We also understand (and the parties do not argue otherwise) that the phrase "as such" in ORS 419B.524 means "as a parent," and we understand mother to have been appearing as a parent when she filed her motion, under *former* ORS 419B.420,[7] to set aside the termination judgment.

---

[6] Mother's brief on appeal did not anticipate the state's ORS 419B.524 argument, and she did not address it at oral argument.

[7] Effective January 1, 2002, *former* ORS 419B.420 and ORS 419B.423 (discussed below) were repealed and, along with *former* ORS 419B.426, were replaced by ORS 419B.923, setting out the court's authority regarding, and standards and procedures for, the modification and set-aside of orders. Or Laws 2001, ch 622, §§ 33, 57. Although the newly enacted provisions are not applicable here, we note that ORS 419B.923 sets out nonexclusive grounds for modification or set-aside, such as the existence of clerical errors, excusable neglect, or newly discovered evidence. ORS 419B.923(1). In addition, it provides that "[t]his section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court." ORS 419B.923(8).

The remaining question is whether a proceeding under *former* ORS 419B.420 on a terminated parent's motion to set aside a termination judgment is encompassed within the phrase "any legal proceeding concerning the child." The adjective "any" can refer to "one," "some," or "all." *See Webster's Third New Int'l Dictionary,* 97 (unabridged ed 1993) (defining "any" as "one or some of whatever kind or sort," "one or another," "one or more," "every," or "all"). Here, where it is used in the context of a prohibition on appearing in legal proceedings, the prohibition logically extends to "all" legal proceedings. Thus, the legislature's use of the broadly inclusive adjective "any" suggests that the phrase "any legal proceeding concerning the child" in ORS 419B.524 includes a proceeding on a motion under *former* ORS 419B.420 to set aside the termination.

The context of ORS 419B.524 calls that conclusion into doubt, however. In *former* ORS 419B.515, setting out requirements for summonses, the legislature referred to a termination proceeding as "the proceeding" and "the matter."[8] In ORS 419B.517, relating to mediation, the legislature refers to "cases involving the termination of parental rights." In ORS 419B.521, the legislature refers to the "hearing * * * on the question of terminating the rights of the parent[.]" Where those portions of the termination statutes use those locutions, but ORS 419B.524 refers to "legal proceedings concerning the child," it is consistent with this state's methodology of statutory construction for us to infer that the legislature intended the latter phrase to refer to proceedings other than the termination proceeding itself. *See Thompson v. Estate of Adrian L. Pannell,* 176 Or App 90, 97, 29 P3d 1184 (2001) (applying that principle of textual construction; citing *State v. Guzek,* 322 Or 245, 265, 906 P2d 272 (1995)).

More significantly as to context, *former* ORS 419B.115(1)(b) provided that "parties" to termination proceedings in the juvenile court under ORS 419B.500 include the "legal parents or guardians of the child[.]"[9] *Former* ORS

---

[8] Effective January 1, 2002, *former* ORS 419B.515 was repealed and replaced by more detailed requirements for summonses set out in ORS 419B.812 to ORS 419B.839. Or Laws 2001, ch 622, §§ 5-13, 57.

[9] Effective January 1, 2002, *former* ORS 419B.115 was amended and renumbered as ORS 419B.875. Or Laws 2001, ch 622, §§ 39, 39a. The relevant portions of ORS 419B.875 are identical to the quoted portions of *former* ORS 419B.115.

419B.115(2)(e) provided that the "rights" of the parties include, but are not limited to, the "right to request a hearing." Thus, by its terms, *former* ORS 419B.115 entitled a parent whose rights are being terminated to "request a hearing." In addition, *former* ORS 419B.420 provided that, "[e]xcept as provided in [*former*] ORS 419B.423 and 419B.426, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct." As discussed above, the adjective "any" can refer to "one," "some," or "all"; as used in *former* ORS 419B.420, the term "any" grammatically and logically means "all" orders, including orders terminating a parent's parental rights. Nor does *former* ORS 419B.420 impose any limitation on the court's authority based on whether the order sought to be modified or set aside was entered as a result of a parent's default or based on whether the order has been, or is being, appealed. Finally, like *former* ORS 419B.115(2)(e), *former* ORS 419B.420 referred to "hearing[s]." *See PGE*, 317 Or at 611 (where the legislature uses the same term in related statutes, court infers that the term has the same meaning); *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 141, 20 P3d 837, *rev den* 332 Or 518 (2001). Considered together, *former* ORS 419B.115 and *former* ORS 419B.420 suggest that a parent whose parental rights have been terminated has the right to seek—and the juvenile court has authority to grant—a hearing on the parent's motion to modify or set aside the termination order or judgment, regardless of whether the order or judgment was the result of the parent's default and regardless of whether the parent is appealing or has appealed the order or judgment.

We also consider *former* ORS 419B.423, which was referred to in *former* ORS 419B.420, and which provided, in part:

"(1) * * * notice and a hearing as provided in ORS 419B.195, 419B.198, 419B.201, 419B.205, 419B.208, 419B.265 to 419B.285, 419B.310 and 419B.317 to 419B.325 shall be granted in any case where the effect of modifying or setting aside the order will or may be to deprive a parent of the legal custody of the child, to place the child in an institution or agency or to transfer the child from one institution

or agency to another. *However, the provisions of this subsection shall not apply to a parent whose rights have been terminated under ORS 419B.500 to 419B.524 or whose child has been permanently committed by order of the court unless an appeal from such order is pending.*" (Emphasis added.)[10]

Stated in the abstract, *former* ORS 419B.423(1) provided that, when modifying or setting aside an order would have specified effects, certain statutory notice and hearing procedures were required to be provided. It also expressly provided, however, that those statutory procedures were not applicable to parents whose rights have been terminated. The latter portion thereby demonstrated that the legislature knew how to provide that certain procedures are not available to a terminated parent. Neither *former* ORS 419B.115, providing that a parent has a "right" to request a hearing, nor *former* ORS 419B.420, establishing the authority of the court to hear and grant a motion to set aside an order, contained such an exclusion or limitation. The express exclusion in *former* ORS 419B.423 as to terminated parents therefore also suggests that the authority established in *former* ORS 419B.420 included authority to consider and grant a terminated parent's motion to set aside a termination judgment.

In summary, the text of ORS 419B.524—particularly the legislature's use of the broadly inclusive adjective "any" to modify the phrase "legal proceeding concerning the child"—suggests that a terminated parent lacks standing to seek, under *former* ORS 419B.420, an order setting aside the termination judgment. However, the provision's context—particularly *former* ORS 419B.115, *former* ORS 419B.420 (itself authorizing the juvenile court to set aside "any" order), and *former* ORS 419B.423—suggests that, ORS 419B.524 notwithstanding, a parent whose rights have been terminated may seek an order modifying or setting aside the termination judgment.

---

[10] We note that depriving a parent of legal custody of a child is not the same as terminating the parent's parental rights. *See* ORS 419B.337 (providing for placement of child in legal custody of the state); ORS 419B.373 (setting out duties of legal custodian).

Because the text and context of ORS 419B.524 suggest at least two plausible interpretations of the statute, we also consider its legislative history. ORS 419B.524 was enacted in 1959 as part of House Bill 153. Or Laws 1959, ch 432, § 27(3) (originally codified as *former* ORS 419.525(3)). Substantive comments on the portion of the bill that eventually was codified as ORS 419B.524 pertained entirely to the issue of an indigent parent's right, under the Due Process Clause, to court-appointed counsel in the termination proceeding and on appeal. *See* Exhibit File, House Judiciary Committee, HB 153 (undated bill summary by Committee Counsel Leo Levenson; March 12, 1959, letter to Committee Chair, Representative George Layman, from University of California, Berkeley, School of Law Professor Geoffrey C. Hazard, Jr.; March 18, 1959, letter to Committee Chair Layman from Clackamas County Circuit Judge Ralph M. Holman). The legislative history of ORS 419B.524 therefore does not assist us in determining the answer to the question presented here.

■ Because our examination of the text, context, and legislative history of ORS 419B.524 has not clearly disclosed its meaning, we "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *PGE*, 317 Or at 612. Here, the applicable maxim is that, "when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning. Statutes therefore will be construed accordingly." *State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996); *see also State v. Smyth*, 286 Or 293, 296, 593 P2d 1166 (1979). As pertinent to this case, we consider whether one of the above-described plausible constructions of ORS 419B.524 would impair a parent's right, under the Due Process Clause, to a "fundamentally fair" termination proceeding. *See State ex rel Juv. Dept. v. Geist*, 310 Or 176, 187-88, 796 P2d 1193 (1990) (a parent whose parental rights the state seeks to terminate is entitled under the Due Process Clause to a proceeding that is "fundamentally fair"). For the following reasons, we conclude that a construction of ORS 419B.524 that deprives a terminated parent of standing to

seek, under *former* ORS 419B.420, an order modifying or setting aside the termination judgment would have that effect.

In *Geist*, the Supreme Court was called on to consider whether, on appeal from an order terminating the parent's parental rights, a terminated parent was entitled to raise a claim of inadequate assistance of counsel in the termination proceeding. In that same case, this court had determined that, although trial counsel appointed under *former* ORS 419.525(2) (now ORS 419B.518[11]) must be "adequate," the parent could not claim inadequate assistance of trial counsel on appeal, because the legislature had not created "a special forum" for such a claim, analogous to proceedings for post-conviction relief in criminal matters. *State ex rel Juv. Dept. v. Geist*, 97 Or App 10, 775 P2d 843 (1989).

The Supreme Court disagreed. The court noted that the "permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants" and that, although "[f]inality in the resolution of parental rights termination cases should be achieved as expeditiously as possible," termination of a parent's parental rights nevertheless must also be achieved in a manner that is consistent with the parent's right to due process. *Geist*, 310 Or at 186 (citing, among other cases, *Lehman v. Lycoming County Children's Services*, 458 US 502, 513-14, 102 S Ct 3231, 73 L Ed 2d 928 (1982); *Lassiter v. Department of Social Services*, 452 US 18, 32, 101 S Ct 2153, 68 L Ed 2d 640 (1981)). The court also noted that parents are entitled by statute to appointed counsel and that the statutory right to counsel in a termination proceeding would be "illusory" if there were no procedure for review of claims of inadequate counsel. *Id.* at 185. The court concluded that, consistently with the need for resolution of termination proceedings that is both expeditious and consistent with a parent's right to due process, an appellate court must consider on direct appeal the parent's challenge to the adequacy of the parent's

---

[11] ORS 419B.518 is identical to *former* ORS 419.525(2). An amendment to ORS 419B.518 by the 2001 Legislature will take effect on October 1, 2003, and is not material here. Or Laws 2001, ch 962, § 15.

appointed trial counsel. *Id.* at 186-87. The court also established the standard by which counsel's adequacy must be reviewed: whether, in the totality of the circumstances including considering counsel's assistance, the termination proceeding was "fundamentally fair," that is, whether it provided the parent with "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 187-91 (citing, among other cases, *Santosky v. Kramer*, 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982); *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976)).

The *Geist* court did not expressly consider the role of either ORS 419B.524 or *former* ORS 419B.420 in achieving an expeditious yet procedurally adequate and fair parental rights termination proceeding. In the context of the issue presented in that case, that is not surprising. A proceeding under *former* ORS 419B.420 is, of course, a proceeding in the juvenile court. As the *Geist* court itself noted, it is unlikely that a challenge to the adequacy of appointed trial counsel will arise in the trial court. 310 Or at 184 n 9.[12]

Nevertheless, we conclude that, consistently with the principles set out in *Geist*, ORS 419B.524 must be interpreted to permit a terminated parent to seek, under *former* ORS 419B.420, an order modifying or setting aside the termination judgment. In particular, where a terminated parent has asserted a defect in the proceeding leading to termination, a hearing under the latter statute—in which, for example, a parent can develop a factual record relating to the asserted defect—is best suited for providing the parent with the required "opportunity to be heard at a meaningful time and in a meaningful manner." *See id.* at 189-90 (stating that standard as the "essence of fundamental fairness"). A proceeding in juvenile court under *former* ORS 419B.420 is also likely to be the most expeditious mechanism for resolving any asserted challenge—including, if the court determines that modification or set-aside is warranted, the expeditious scheduling and hearing of whatever further proceedings are

---

[12] That unlikelihood notwithstanding, the *Geist* court noted—twice—the juvenile court's presumed "inherent authority to remove appointed counsel if found to be inadequate." *Id.* at 184, 185 n 10.

required. By comparison, an appeal—particularly one resulting in the reversal of the termination judgment and further proceedings below—may result in a much greater delay in final resolution of the matter. Moreover, some errors in trial court proceedings could be asserted *only* in a set-aside proceeding, either because they were not detected within the time limit for filing a notice of appeal or otherwise could not be raised on direct appeal from a termination judgment.[13] It would be especially troublesome if—unlike other civil litigants—parents facing termination of their parental rights had no access to the courts for the purpose of remedying such errors. Thus, consistently with due process, as well as with the need for expeditious resolution of parental rights termination proceedings, we hold that ORS 419B.524 did not deprive mother of standing to seek to set aside the default termination judgment.

■ We turn to the question whether the juvenile court erred in denying mother's motion. Mother argues that the court erred in denying that motion because, under *former* ORS 419B.515, she was not properly served with summons to appear at the September 6, 2000, "best interest" hearing at which her parental rights were terminated by default. The state responds that, when a parent has been properly served under that statute with an "initial" summons to appear in a termination proceeding, the court has authority to continue the proceeding by setting further hearings on the matter and to terminate the parent's rights for failure to appear at such further hearings without additional summons.

■ We review the juvenile court's ruling on mother's motion to set aside for abuse of discretion; however, to the extent that the ruling was based on a substantive legal conclusion, we review it for errors of law. *Cf. Becker v. Pieper*, 176 Or App 635, 641, 32 P3d 912 (2001) (explaining that, in the context of a trial court's order granting relief from default, an abuse of discretion standard of review is "appropriate when the issue on appeal is whether a trial court's

---

[13] *Former* ORS 419B.420 did not specify the grounds on which an order could be set aside. However, the typical grounds for such relief in other civil actions include mistake, excusable neglect, misconduct by the adverse party, and the like. *See* ORCP 71.

decision was within the limits of its legal discretion" under the applicable rule of civil procedure; however, when the ruling on the motion for relief from default "resulted necessarily from a substantive legal conclusion, we review that legal conclusion for errors of law"); *see also, State ex rel Upham v. McElligott,* 326 Or 547, 553-56, 956 P2d 179 (1998) (reviewing juvenile court's ruling on motion for advisory jury for errors of law). *Former* ORS 419B.515 provided that an order terminating parental rights

"may be made only after service of summons, as provided in [*former*] ORS 419B.274, 419B.277 and 419B.280, on the parent or parents. The summons shall contain a statement to the effect that the rights of the parent or parents are proposed to be terminated in the proceeding and that if the parent or parents fail to appear at the time and place specified in the summons, the court may terminate parental rights and take any other action that is authorized by law."

As pertinent here, we understand *former* ORS 419B.515 to have established at least the following requirements. First, by reference to and incorporation of *former* ORS 419B.274—which itself referred to and incorporated ORCP 7, setting out requirements for summons—*former* ORS 419B.515 established that, before a parent's parental rights were terminated, the parent must be properly notified of the state's proposed action in that regard.[14] *See Stull v. Hoke,* 153 Or App 261, 269-70, 957 P2d 173, *rev den* 327 Or 621 (1998) (the "underlying purpose" of ORCP 7 is to "provide adequate notice" of the existence and pendency of an action).

Second, and also consistently with ORCP 7, *former* ORS 419B.515 required that a parent be provided with a "direction to the [parent] requiring [the parent] to appear and defend" the action. *See* ORCP 7 C(1)(c) (setting out the quoted requirement as to the "defendant" in the action).[15]

---

[14] Effective January 1, 2002, *former* ORS 419B.274 was repealed. Or Laws 2001, ch 622, § 57.

[15] For the purposes of ORCP 7, "plaintiff" means a party issuing summons and "defendant" means a party upon whom service of summons is sought. ORCP 7 A.

Third, by its terms *former* ORS 419B.515 required that the summons specifically inform the parent that the parent was subject to termination by default under specified circumstances—namely, if the parent "fails to appear at the time and place specified in the summons." *See also* ORCP 7 C(1)(c) (requiring that a summons contain "a notification to defendant that in case of failure to [appear in the action], the plaintiff will apply to the court for the relief demanded in the complaint"). Moreover, by necessary implication, the quoted portion of *former* ORS 419B.515 required that a parent be specifically informed of that time and place.

Finally, and most significantly here, by requiring the summons to inform a parent that the parent is subject to default if he or she "fail[ed] to appear at the time and place specified in the summons," *former* ORS 419B.515 in effect established a substantive limitation on the court's authority to terminate a parent's rights in the parent's absence. Under that provision, the juvenile court was authorized to terminate an absent parent's rights in a particular hearing or phase of the termination proceeding only if the parent received adequate notice of the time and place of, and consequences of failure to appear at, *that hearing*.

Here, on its face, the June 5, 2000, summons expressly notified mother that the state was seeking termination of her parental rights—that is, it notified her of the existence and pendency of the action. It also expressly directed her to appear at the June 22 show cause hearing (informing her, moreover, of the specific address and the specific time of day of the hearing) and further expressly informed her that she "must appear" at two additional hearings that would be scheduled—a pretrial conference and a trial. The summons also expressly informed mother that her parental rights could (indeed, would) be terminated if she did not appear at the June 22 show cause hearing, at the pretrial hearing, or at the trial.

However, the juvenile court terminated mother's parental rights following her failure to appear at the September 6 best interest hearing. On its face, the June 5 summons does not "direct" mother to appear at that hearing, does not inform her of the time and place of that hearing, and does not

inform her that, if she fails to appear at that hearing, her rights can be terminated. Thus, the June 5 summons is deficient, under *former* ORS 419B.515, as to the September 6 hearing. Accordingly, the juvenile court lacked authority by reason of that summons to terminate mother's parental rights at the latter hearing.

The state nevertheless maintains that, even assuming that a parent must properly have been served with summons to appear at the hearing at which the parent's rights were terminated by default, the trial court in this case adequately "summoned" mother to the September 6 best interest hearing "verbally and by court order" issued at the June 22 show cause hearing. We disagree.

As to the existence of a "verbal" (that is, oral) summons, we have not identified any Oregon statute or appellate court decision authorizing, or recognizing the sufficiency of, such a procedural device, and we decline to recognize it here.

■ We also conclude that the court's written order issued after the June 22 show cause hearing did not constitute adequate notice of the September 6 "best interest" hearing for the purposes of *former* ORS 419B.515. Among other items, the order states: "This matter is set for a Best Interest Hearing on 9/6/00, at 10:30, before [Referee] Hughes." It also contains a paragraph, initialed by the judge, stating:

> "The parents present were given verbal and written notice of the above-scheduled hearings. The parents present were directed to appear at the Pre Trial Hearing, Status Hearing, Best Interest Hearing, TPR Pre Trial Hearing and Trial and advised of the consequences of their failure to appear at any of those court appearances. The Summons, Petition, and personally served subpoenas are continued to the above-scheduled hearings."

Thus, the order sets out the time and arguably (by reason of its caption) the place—the Juvenile Department of the Multnomah County Circuit Court—of the September 6 hearing.[16] However, the June 22 order fails to inform mother in writing of the specific possibility of default termination, as

---

[16] We believe that the better practice would be to state the actual address where the hearing is to take place, as did the initial summons in this case.

required under *former* ORS 419B.515. Instead, it merely states that mother has been "advised of the consequences," with no further details, of her failure to appear at the enumerated hearings. Accordingly, even assuming that a court's order setting further hearings in a termination proceeding need not be captioned as a "summons"[17] and—because it has been provided directly to the parent by the court—that it need not be "served" according to the technical requirements of ORCP 7,[18] the June 22 order was inadequate to meet the requirements of *former* ORS 419B.515 as to the September 6 hearing. Consistently with *former* ORS 419B.515, the juvenile court therefore also lacked authority to terminate mother's parental rights by default at that hearing by reason of the June 22 order.

 Finally, we also decline to regard the September 6 best interest hearing as, in effect, a continuation of the June 22 show cause hearing as to which mother received adequate notice. The June 5 summons notified mother of proceedings denominated a "pretrial conference" and a "trial" and informed her that failure to appear at "either hearing"—that is, either the pretrial conference or the trial—would result in the termination of her parental rights. By contrast, the court's oral instructions during the June 22 hearing and its June 22 posthearing written order purported to notify mother of the occurrence of, and consequences arising out of, two other types of hearing: a "status" hearing and a "best interest" hearing. Thus, the juvenile court itself differentiated among those various types of hearings and provided mother at various times with at least some specific and separate information about each. Where the court's information was adequate under *former* ORS 419B.515 as to some of the hearings but, as discussed above, was inadequate as to others that were specifically identified by the court as different

---

[17] In this case, the court's June 22 order is captioned "order after pre-trial hearing."

[18] To the extent that a properly served summons—including proof of service—ensures that a parent has received notice of a proceeding scheduled therein, a possible alternative method of confirming that the parent has received proper notice of further proceedings when such notice is provided in the form of a court order issued directly to the parent might be to obtain the parent's written acknowledgment of the order.

types of hearings, we cannot cure the deficiency as to the latter hearings by considering them to be mere continuances of other types of hearings as to which mother received adequate notice.

Our conclusion in that regard is consistent with *State ex rel Juv. Dept. v. Burris*, 163 Or App 489, 988 P2d 414 (1999). In that case, the parent was served with a petition to terminate her parental rights and with a summons directing her to appear at a hearing on October 6, 1997. The summons also informed her that, if she did not appear "as directed above," the matter could proceed in her absence. *Id.* at 491. The parent appeared at that hearing and several subsequent ones. *Id.* at 491-92. She failed to appear, however, at a December 30 "pretrial conference." *Id.* at 492. The juvenile court allowed the state's motion to proceed at that time with a *prima facie* case for dependency jurisdiction under ORS 419B.100 and, following that proceeding, entered a default judgment establishing jurisdiction. *Id.* at 492-93. The parent appealed. This court determined that the juvenile court had erred, because the parent had never received notice, as required by the statute relating to summons in dependency matters, that the court could enter a default judgment against her if she failed to appear at that particular hearing. *Id.* at 494. We therefore reversed the judgment and accompanying dispositional order and remanded the case for further proceedings. *Id.* at 496.

Again, here, mother was never expressly directed in writing to appear at the September 6, 2000, best interest hearing or expressly informed in writing of the specific consequences of her failure to appear *at that hearing.* Consistently with *former* ORS 419B.515 and related statutes, the juvenile court therefore lacked authority to terminate mother's rights at the September 6 hearing. It follows that the court also erred in denying mother's subsequent motion based, in part, on that defect, to set aside the termination judgment.

Because we conclude that the trial court erred for the described reason, we need not determine whether termination of mother's parental rights at the September 6

hearing also violated her rights under the Due Process Clause.

Order denying motion to set aside reversed; termination judgment vacated; remanded for further proceedings.