Argued and submitted November 7, 2011, motion to allow late notice of appeal denied; motion to dismiss appeal granted; appeal dismissed February 29, petition for review denied August 16, 2012 (352 Or 341)

In the Matter of
C. M. M., a Child.

DEPARTMENT OF HUMAN SERVICES
and C. M. M.,
*Petitioners-Respondents,*

*v.*

W. S. C., III,
*Appellant.*

Clatsop County Circuit Court
09J5718;
Petition Number 05J5718;
A149189 (Control)

In the Matter of
G. J. R. M., a Child.

DEPARTMENT OF HUMAN SERVICES
and G. J. R. M.,
*Petitioners-Respondents,*

*v.*

W. S. C., III,
*Appellant.*

Clatsop County Circuit Court
09J5719;
Petition Number 05J5719;
A149190

In the Matter of
L. R. M., a Child.

DEPARTMENT OF HUMAN SERVICES
and L. R. M.,
*Petitioners-Respondents,*

*v.*

W. S. C., III,
*Appellant.*

EXPEDITED TERMINATION OF
PARENTAL RIGHTS CASE

Clatsop County Circuit Court
09J5720;
Petition Number 05J5720;
A149191

In the Matter of
W. H. C., a Child.

DEPARTMENT OF HUMAN SERVICES
and W. H. C.,
*Petitioners-Respondents,*

*v.*

W. S. C., III,
*Appellant.*

EXPEDITED TERMINATION OF
PARENTAL RIGHTS CASE

Clatsop County Circuit Court
09J5721;
Petition Number 05J5721;
A149192

In the Matter of
N. M. A. M., a Child.

DEPARTMENT OF HUMAN SERVICES
and N. M. A. M.,
*Petitioners-Respondents,*

*v.*

W. S. C., III,
*Appellant.*

EXPEDITED TERMINATION OF
PARENTAL RIGHTS CASE

Clatsop County Circuit Court
09J5722;
Petition Number 03J5722;
A149193

Clatsop County Circuit Court
09J5718, 09J5719, 09J5720, 09J5721, 09J5722;
A149189

273 P3d 313

Shannon L. Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Megan L. Jacquot filed the brief for respondent children, C. M. M., G. J. R. M., L. R. M., and W. H. C.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

### WOLLHEIM, J.

The juvenile court terminated father's and mother's parental rights with respect to five of their children: N, C, G, L, and W. Mother timely appealed the termination judgments, and we affirmed those judgments on this date. *Dept. of Human Services v. T. M. M.*, 248 Or App 352, 273 P3d 322 (2012). Father, however, did not timely appeal because his trial counsel mishandled the filing of his notices of appeal. He asks that we nonetheless allow his late appeal and reverse the termination judgments. For the reasons that follow, we are not authorized to create a judicial remedy for father's attorney's errors in initiating the appeal, and we are not persuaded that father, as a result of his trial counsel's failure, was denied a fundamentally fair termination proceeding under the Due Process Clause of the United States Constitution. We therefore deny father's motion for a late appeal and dismiss the appeal as untimely.

The preliminary question in this case is whether father's appeal is procedurally barred because his notices of appeal were filed more than 90 days after the entry of judgment. *See* ORS 419A.200(3)(c) ("The notice must be filed not later than 30 days after the entry of the court's judgment."); ORS 419A.200(5) (authorizing appeal to be filed within 90 days after entry of judgment, where failure to file notice within 30 days is not personally attributable to the appellant and appellant demonstrates colorable error). Thus, we begin by setting out the facts pertinent to the filing of the notices of appeal.

The termination hearing spanned 11 days, concluding on December 15, 2010, at which point the trial court announced in open court that it was terminating both parents' rights to their children. Father, at that point, informed his trial counsel, Timothy Pizzo, of his intent to appeal.

According to Pizzo, he returned to his office and "called the Public Defense Appellate Division to notify them of [father's] desire to appeal," and was told by that office to "wait for a written order before beginning the appeal process." Proposed judgment forms were sent to Pizzo in early January 2011, and Pizzo did not object to them. Judgments terminating father's parental rights to N, C, G, L, and W

were signed on January 19, 2011,[1] and they were entered the following day. Copies were mailed to Pizzo but, he avers, were "misfiled by [his] relatively new legal assistant."

On February 9, 2011, mother's counsel telephoned Pizzo and left a message asking whether father had filed his notice of appeal. Pizzo returned her call six days later, and they discussed the filing deadline. On February 22, 2011, Pizzo "prepared and served the Notices of Appeal." Pizzo, however, never *filed* the notices of appeal with this court; instead, he filed them in Clatsop County Circuit Court. (OJIN reflects that the notices were received by that court on February 23, 2011.)

On June 13, 2011—almost *four months* after preparing and misfiling his notices of appeal—Pizzo received a call from an Oregon Public Defense Services (OPDS) supervisor and "discovered for the first time that [he] had failed to get the Notices to the Court of Appeals." According to Pizzo, "[s]hortly thereafter, on the advice of OPDS, [he] contacted Angela Sherbo" at Youth, Rights, & Justice (formerly Juvenile Rights Project). Sherbo suggested the possibility of filing a motion for a late appeal and asked that Pizzo call her back with more information about the case. Pizzo states that "[a] family emergency arose and [he] left town and did not follow-up with Ms. Sherbo."

Sherbo then called Pizzo sometime around the week of July 11, 2011, to inquire whether he had resolved the appeal issue. Pizzo told her that he had been out of town and had not resolved the matter. On July 14, Sherbo again called Pizzo to say that she had conferred with the appellate division of OPDS and that she would file a motion for a late appeal on behalf of father. She asked that Pizzo instruct father to call her so that she could discuss the case and determine whether father wanted to pursue that course of action.

On July 15, 2011, Sherbo requested Pizzo's affidavit to file in support of her motion for a late appeal. Between

---

[1] In his affidavit, Pizzo states that the judgments "were signed on January 21, 2011 and mailed to my office." The judgments, on their face, are signed January 19 and, according to the Oregon Judicial Information Network (OJIN), were entered on January 20, 2011.

July 18 and July 22, Sherbo made multiple calls and sent two e-mails to Pizzo to remind him of his obligation. According to Pizzo, "On Friday, July 22, 2011, after a telephone conversation with Ms. Sherbo, [he] emailed a draft to her office"; "at approximately 9:00 pm that evening, [Pizzo] realized [he] had sent it to the wrong email address." The following week, Sherbo filed an emergency motion to file a late appeal, along with an affidavit from Pizzo, dated July 25, 2011, describing the circumstances set out above.

In the meantime, mother had filed her opening brief on June 27, 2011, and oral argument had been scheduled for September 6, 2011. Counsel for the children (except N, who had his own attorney below but was not represented on appeal) and counsel for the Department of Human Services (DHS) had requested extensions of time in which to file their responses to mother's brief; as a result of those requests, their response briefs were due on August 8, 2011.

Counsel for C, G, L, and W did not oppose father's motion for a late appeal; in fact, father's appellate counsel represented in her motion that the children's counsel "also supports the motion." DHS, however, did oppose the motion and, in response, filed a motion to dismiss the late appeal.

On August 8, 2011, the Appellate Commissioner deferred "ruling on the motions to the department that hears these cases on their merits." The Appellate Commissioner postponed oral argument in mother's case and ordered that mother's and father's cases be scheduled for argument before the same department on the same date. DHS sought reconsideration of that order by the Chief Judge, but the motion for reconsideration was denied.

Mother's and father's cases were ultimately argued on November 7, 2011, and it now falls upon us to resolve father's request for leave to file a late appeal and DHS's motion to dismiss father's late appeal. Father advances two bases for considering his untimely appeal. First, he invites this court to fashion a judicial remedy to vindicate his statutory right to adequate assistance of counsel, the course taken in *State ex rel SOSCF v. Hammons*, 169 Or App 589, 10 P3d 310 (2000). Second, father argues that, as a matter of due process under the federal constitution, he is entitled "to a

mechanism to raise the substantive issues of his fitness on direct appeal."

Father's first argument—that this court may fashion its own exception to the statutory timelines in ORS 419A.200 in order to vindicate his right to adequate assistance of counsel—is foreclosed by our decision in *State ex rel Juv. Dept. v. M. U.*, 229 Or App 35, 210 P3d 254 (2009). In *M. U.*, the mother's court-appointed counsel failed to timely file a notice of appeal from a judgment establishing dependency jurisdiction with respect to her daughter. The mother sought leave to pursue an otherwise untimely appeal, relying on this court's decision in *Hammons*, a case in which we had allowed a late appeal as a judicial remedy to vindicate a parent's right to adequate assistance of counsel. We denied the motion to allow a late appeal, on the ground that ORS 419A.200 had been amended after *Hammons* and, as amended, "effectively preempts the relief that mother seeks here." *M. U.*, 229 Or App at 42.

As we explained in *M. U.*, it was a legislative gap in ORS 419A.200(4) (1999) that had allowed us to fashion in *Hammons* a judicial remedy for counsel's untimely appeal:

> "The determination of appellate jurisdiction in *Hammons* thus reduced to whether we ' "may fashion an appropriate procedure" in the absence of "legislative procedure for vindicating the statutory right to adequate counsel[.]" ' [*Hammons*, 169 Or App at 593] (quoting [*State ex rel Juv. Dept. v. Geist*, 310 Or 176, 185, 796 P2d 1193 (1990)]) * * *. We observed that no such legislative procedure existed because the delayed appeal provisions contained in ORS 419A.200(4) (1999), were, at that time, available only to parents who were *unrepresented by counsel*—and not those who were *represented by counsel, albeit inadequately*. For that reason, we concluded that it was permissible for us to fashion a remedy and, as in *Geist*, to do so in the context of a direct appeal."

229 Or App at 41 (footnote omitted; emphasis in *M. U.*).

In 2001, the legislature closed that gap by extending the right to a late appeal to *represented* parties as well. As amended in 2001—and as it now reads—ORS 419A.200 provides:

"(5)(a)   Upon motion of a person, other than the state, entitled to appeal under subsection (1) of this section, the appellate court shall grant the person leave to file a notice of appeal after the time limits described in subsection (3) of this section if:

"(A)   The person shows a colorable claim of error in the proceeding from which the appeal is taken; and

"(B)   The person shows that the failure to file a timely notice of appeal is not personally attributable to the person.

"(b)   A person other than the state is not entitled to relief under this subsection for failure to file timely notice of cross-appeal when the state appeals pursuant to ORS 419A.208.

"(c)   The request for leave to file a notice of appeal after the time limits prescribed in subsection (3) of this section must be filed no later than 90 days after entry of the judgment being appealed and must be accompanied by the notice of appeal sought to be filed. A request for leave under this subsection may be filed by mail and is deemed filed on the date of mailing if the request is mailed as provided in ORS 19.260.

"(d)   The court may not grant relief under this subsection unless the state has notice and opportunity to respond to the person's request for relief."

As a result of those amendments, we no longer have the authority to craft, as a judicial, gap-filling remedy, a different procedure to vindicate the right to adequate assistance of counsel in the filing of a notice of appeal:

"Thus, the decisive factor upon which our authority to craft a remedy in *Hammons* was predicated—that is, 'the absence of [a] "legislative procedure for vindicating the statutory right to adequate counsel[,]" ' *Hammons*, 169 Or App at 593 (quoting *Geist*, 310 Or at 185)—no longer exists. At least with respect to claims of inadequate assistance of counsel based on the failure to timely file an appeal of a judgment of the juvenile court, the legislature has provided a specific procedure in ORS 419A.200(5). As a result, mother's statutory right to adequate counsel—if, indeed, she has one under ORS 419B.205—would not be 'illusory,' as was the case in *Hammons*, 169 Or App at 593-94, due to

the lack of any procedure for remedying the asserted inadequacy. Rather, even assuming mother has a statutory right to adequate counsel analogous to the right derived by the court in *Hammons*, mother's remedy for vindication of that right is now governed by ORS 419A.200(5)."

*M. U.*, 229 Or App at 43-44.

Because the mother in *M. U.* did not satisfy the requirements for filing a delayed appeal under ORS 419A.200(5), we dismissed her appeal. "The fact that mother did not timely invoke, and, thus, qualify for, that remedy," we reasoned, "does not nullify its existence and allow us to, instead, craft, under the rationale of *Hammons*, a more extensive remedy, circumventing the legislatively prescribed restrictions." 229 Or App at 44.

The same is true here. Father did not satisfy the requirements of ORS 419A.200(5) for filing a late appeal—namely, he did not file his request for leave to file a notice of appeal within 90 days after entry of the termination judgments being appealed. And for the reasons explained in *M. U.*, we are not authorized, now that the legislature has provided a remedy for late appeals by represented parties, to fashion our own, more extensive remedy under the rationale in *Hammons*.[2]

Alternatively, father argues that, even if *Hammons* does not authorize a judicial remedy for a late appeal, he nevertheless must be permitted to "raise substantive issues of his fitness on direct appeal" as a matter of procedural due process under the Fourteenth Amendment. US Const, Amend XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *.").[3]

---

[2] In this posture, when the legislature has already established a 90-day period for pursuing an untimely appeal, the remedy father seeks would effectively require us to rewrite the statute to accommodate his circumstances—something we are not permitted to do. *See US West Communications v. City of Eugene*, 336 Or 181, 188, 81 P3d 702 (2003) (explaining that courts may not rewrite statutes to insert what the legislature has omitted). The legislature routinely establishes filing requirements—statutes of limitation, for example—that can have harsh consequences for particular litigants; it is not the role of this court to second-guess those legislative decisions in the guise of "gap-filling."

[3] Father observes, correctly, that *M. U.* did not foreclose his constitutional argument. *See* 229 Or App at 44 n 9 (declining to address constitutional arguments, which mother did not raise).

On the record before us, we are not persuaded that father, in these termination proceedings, has received less process than is constitutionally due.

The "interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." *M. L. B. v. S. L. J.*, 519 US 102, 119, 117 S Ct 555, 136 L Ed 2d 473 (1996) (internal quotation marks omitted). Thus, a proceeding to terminate parental rights—among "the most drastic actions the state can take against its inhabitants"—must comport with due process. *Geist*, 310 Or at 186. Due process, in turn, requires that the state's procedural safeguards ensure that a termination proceeding is "fundamentally fair." *Id.* at 187-88 (applicable due process standard in juvenile proceedings is "fundamental fairness") (citing *McKeiver v. Pennsylvania*, 403 US 528, 543, 91 S Ct 1976, 29 L Ed 2d 647 (1971)); *see also Santosky v. Kramer*, 455 US 745, 753-54, 102 S Ct 1388, 71 L Ed 2d 599 (1982) ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.").

The Due Process Clause of the federal constitution does not, by itself, guarantee a right to *appellate review* of the judgment terminating parental rights. *M. L. B.*, 519 US at 120 ("[D]ue process does not independently require that the State provide a right to appeal."). However, once a state has granted the right to appeal, the procedures used in deciding the appeal must comport with the demands of due process. *Cf. Evitts v. Lucy*, 469 US 387, 396, 105 S Ct 830, 83 L Ed 2d 821, *reh'g den*, 470 US 1065 (1985) ("A first appeal as of right [in a criminal prosecution] therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."); *Shipman v. Gladden*, 253 Or 192, 199, 453 P2d 921 (1969) (holding, in criminal context, that "failure of counsel to timely file a notice of appeal after he has been requested or agreed to do so is incompetence as a matter of law and a denial of due process"). In other words, the appellate process cannot itself undermine the "fundamental fairness" of the termination proceeding. *See, e.g., In re B.G.*, 317 SW 3d 250, 251-52 (Tex Sup Ct 2010) (provision of Texas Family Code requiring statement of

issues to be filed within 15 days after judgment cannot "consistent with due process, preclude an appeal complaining of ineffective assistance"; nor does "due process * * * allow the lack of the required statement to be the basis for denying the parent an appellate record").

Oregon has provided parents a statutory right to appeal termination judgments and, as discussed above, has conditioned that right on the timely filing of a notice of appeal. ORS 419A.200(1), (3). However, the statute also provides an additional safeguard in the event that the parent or the parent's counsel, through no fault of the parent, fails to file the notice of appeal within the prescribed 30-day period. In that circumstance, ORS 419A.200(5) affords an extended time period—up to 90 days from the entry of the termination judgments—for the parent to pursue a late appeal, so long as the parent can demonstrate colorable error in the termination proceeding.

Father argues that, in his particular circumstances—*i.e.*, where a parent directs his counsel to appeal, and the attorney fails, first, to file the notice of appeal within 30 days and, then, fails to discover the mistake within 90 days—some additional process is necessary to comport with "fundamental fairness." DHS, meanwhile, responds that the state has an interest in timely resolutions to the placement of children and that ORS 419A.200, by granting an additional 60 days to discover whether the appeal has been timely commenced and to remedy the error, provides all the appellate process that is due.

The parties agree that, in determining whether the process that has been provided is constitutionally sufficient, courts must balance three factors: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of that interest, including the probable value of additional safeguards; and (3) the countervailing public interest. *Mathews v. Eldridge*, 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976). According to father, the factors weigh clearly in favor of providing an additional procedural safeguard in his circumstances; DHS weighs things differently, particularly, the government's interest in speedy resolution of termination cases and the risk of erroneous deprivation.

As applied to the general category of parents who receive inadequate assistance of counsel in filing an appeal, we agree with DHS that, balancing the three *Mathews* factors, ORS 419A.200 provides due process. *See Mathews*, 424 US at 345 ("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."). The first *Mathews* factor—the interest at stake—demands significant procedural safeguards. Father's interest in a continued relationship with his children is "perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel v. Granville*, 530 US 57, 65, 120 S Ct 2054, 147 L Ed 2d 49 (2000). The state, too, has an interest in an "accurate and just decision," given its "urgent interest in the welfare of the child." *Lassiter v. Department of Social Services*, 452 US 18, 27, 101 S Ct 2153, 68 L Ed 2d 640 (1981).

When the second and third factors are considered, however, we conclude that the state, through ORS 419A.200, has indeed provided the necessary protection. The value of an additional procedural safeguard for a late appeal—that is, in addition to those already provided by ORS 419A.200(5)—is slight. Under that statute, parents in father's position are given a total of 90 days to ensure that their appeal is filed in a timely manner, including 60 days to remedy counsel's mistake. It is the rare case in which a parent, acting diligently, would have no ability to discover the error and preserve his or her right to appeal a termination judgment. And, that 90-day period is a reasonable one, considering the third factor—the countervailing public interest. The state has an "unusually strong" interest in achieving finality in custody disputes, *Lehman v. Lycoming County Children's Services Agency*, 458 US 502, 513, 102 S Ct 3231, 73 L Ed 2d 928 (1982), and a never-ending appellate process is sharply at odds with that interest. The statute, which includes a remedy for counsel's mistakes in filing a notice of appeal, provides constitutionally due process in all but the rare case.

We appreciate, however, that "[f]undamental fairness is flexible and calls for such procedural protections *as the particular situation demands*." *Geist*, 310 Or at 190

(emphasis added). But even assuming that it might be appropriate under *Mathews* to consider father's particular circumstances as a "rare" case, we would likewise conclude, in this unique procedural posture, that father's termination proceedings have been "fundamentally fair."

The third Mathews factor is less decidedly in the state's favor when considered in light of how the appeal has progressed. Contrary to the state's contention, the delay in finality occasioned by father's motion for a late appeal in this particular case is not especially compelling. By the time father filed his motion for a late appeal, mother's appeal with respect to her rights to the children was already pending and DHS, for reasons independent of father's appeal, had moved for an extension of time until August 8 to file its response to mother's brief. Oral argument was set for September 6, 2011.[4]

Along with his motion to file a late appeal, father filed an affidavit from mother's counsel, Shannon Flowers, who averred that she was already familiar with the trial court record, would undertake appellate representation of father, and would file a brief within two weeks of the court granting the motion. As it turned out, oral argument was heard in mother's and father's cases and both cases were submitted for decision on November 7, 2011, just two months after mother's appeal was scheduled for submission. In other words, mother's case had already delayed finality with respect to the children's permanent living arrangement; father's motion for a late appeal added two months to that delay. Two months is not an insignificant amount of time in a child's life, but neither is it so long as to outweigh father's, the children's, and the state's concurrent interest in avoiding an erroneous termination of the parent-child relationship.

However, the second factor—risk of erroneous deprivation and the value of added safeguards—is dispositive in this particular case. As noted above, mother's and father's cases were tried together, were argued and submitted on appeal at the same time, and involve the same record. For

---

[4] The Oregon Rules of Appellate Procedure provide an expedited schedule for briefing, arguing, and submitting termination cases. ORAP 10.15.

purposes of mother's appeal, we have concurrently reviewed the entire termination proceeding *de novo*. Thus, we are in an unusual posture to determine not only the risk of erroneous deprivation, but whether there was, in fact, *any* erroneous deprivation of father's liberty interest. *Cf. Geist*, 310 Or at 191 (finding of inadequate assistance of counsel does not, "standing alone, require a remand or reversal if, on *de novo* review of the record, the reviewing court is satisfied that the proceeding was fundamentally fair and that even with adequate counsel, the result inevitably, would have been the same").

We will not repeat, in detail, the facts as we found them on *de novo* review in mother's case, *T. M. M.*, 248 Or App at 356-64. Our conclusion in that case was that mother would not have been fit to begin reintegrating the children into her home until at least seven months after the termination trial. The expert testimony, which we credited, was that even six months was too long for the children, in light of their particular needs, to wait for permanency. We further concluded that it was in their best interest that they be freed for adoption. 248 Or App at 368-73.

We would find, on *de novo* review of the same record in this case, that father, like mother, was at least six months away from being able to begin reintegrating his children into his home. We will not belabor father's struggles with sobriety and, at times, violence; suffice it to say that father has an extensive history of substance abuse and has failed to succeed in various treatment options. However, he made commendable progress in the year before the termination trial and, by all accounts, has undergone a "spiritual transformation." That transformation has occurred at the Astoria Rescue Mission (the Mission), a faith-based organization that provides shelter and assistance to individuals who, like father, are attempting to change their lives. At the time of the termination hearing, father was a "manager" at the men's side of the Mission, and his substance abuse counselors and probation officer believed that the Mission and father's concurrent recovery program provided a good support network.

Father's recovery, though, occurred in the highly structured and supportive environment of the Astoria Rescue

Mission. The clear and convincing evidence is that the Mission is not an appropriate placement for children, and that father would need to move to a different environment in which to reintegrate his children.

Dr. Deitch, a psychologist who evaluated father, testified that DHS should not consider returning the children to father's care until he has been living outside the "structured environment" of the Mission for six months. Deitch had most recently diagnosed father with cannabis dependence, amphetamine dependence, and personality disorder not otherwise specified—disorders that were either in remission or had improved since his original diagnoses. Deitch, although impressed by father's progress, offered only a "guarded prognosis"—"the jury is still out, so to speak."

Given father's history of abuse, his pattern of relapse, and the circumstances of his most recent progress (*i.e.*, the structured environment of the Mission), we would find that father, by reason of his drug dependence and living circumstances, was presently unfit to parent his children. We would further find, as Deitch recommended, that father was at least six months away from beginning the process of reintegrating his children into his home.

For the reasons we explained in *T. M. M.*, six months is simply too long for father's five children to wait for permanency. As a result of mother's and father's neglect, N, C, G, L, and W each have particular needs for permanency and to form and maintain lasting attachments. 248 Or App at 368-72. There is clear and convincing evidence in this record, including expert testimony, that given those needs, six months is not a reasonable delay.

We would further conclude, as we did in *T. M. M.*, that termination of parental rights is in the best interest of each of child. ORS 419B.500. Father, like mother, is bonded with N, C, G, and L.[5] But, like mother, father also has consistently demonstrated an inability to parent them. The children are especially bonded to one another and were, at the

---

[5] W, who has been in foster care for most of his life, is not bonded to mother or father. *See T. M. M.*, 248 Or App at 361.

time of the termination hearing, doing well in a foster placement that was willing to adopt them. The clear and convincing evidence in the record is that it is in the children's best interests that father's parental rights to each of the children be terminated and that the children be freed for an adoptive placement together.

Given that we, like the juvenile court, would conclude that father's parental rights should be terminated, we are not persuaded there is a risk of error in this case that would, for due process purposes, require that we allow father to circumvent the requirements of ORS 419A.200. Father had a full and fair hearing in the trial court, and the trial court reached the correct outcome.

In sum, ORS 419A.200 comports with due process in the generality of cases. Even assuming that due process might somehow demand more in father's circumstances, we are persuaded that, in the totality of the circumstances, the termination proceedings have been fundamentally fair, and due process does not require that father be allowed to file a late appeal.

Motion to allow late notices of appeal denied; motion to dismiss appeals granted; appeals dismissed.